IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBAL MARINE SYSTEMS LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> TYCO TELECOMMUNICATIONS (US) INC. and TRANSOCEANIC CABLE SHIP CO. INC., <br><br> Defendants. | Case No. 05-11605-RGS |

**AFFIDAVIT OF JOHN L. CUDDIHY PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 56(f)**

I, John L. Cuddihy, hereby depose under oath as follows:

1. I am over 21 years of age and competent to testify to the matters set forth herein. I have personal, first-hand knowledge of the facts set forth in this affidavit.

2. I am an attorney with the law firm of Williams & Connolly LLP and am admitted *pro hac vice* as counsel for Defendants Tyco Telecommunications (US) Inc. and Transoceanic Cable Ship Company, Inc.

3. I have reviewed and am familiar with the Motion for Partial Summary Judgment of Infringement filed by Plaintiff Global Marine Systems Limited ("Plaintiff's Motion") on July 26, 2006.

4. I have also reviewed and am familiar with the Declaration of Malcolm Marten filed in support of Plaintiff's Motion ("Marten Declaration"). In that Declaration, Mr. Marten provides his personal opinion on whether the armored clamp components of Defendants' Millennia Joint infringe the patent-in-suit, U.S. Patent No. 4,912,815 ("the '815 Patent"). The

Marten Declaration is cited more than 20 times in Plaintiff's Motion, and is Plaintiff's sole factual support for much of its infringement analysis.

### Overview

5. On July 26, 2006 – two months before the due date for opening *Markman* briefs and five months before the due date for initial expert reports – Plaintiff filed a motion for partial summary judgment of infringement ("Plaintiff's Motion"). That Motion is supported by a declaration from an expert witness (Malcolm Marten) who was not so designated before the filing of Plaintiff's Motion. Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Defendants request the opportunity to take limited document and deposition discovery that they need to fully and fairly address the merits of Plaintiff's summary judgment papers.

6. Specifically, Defendants need to take document and deposition discovery from Mr. Marten and the named inventor of the '815 Patent, Mr. Peter Jenkins. Mr. Jenkins is a former employee of Plaintiff residing in the United Kingdom and is represented in this action by Plaintiff's counsel. Messrs. Marten and Jenkins are sources of extrinsic evidence relevant to the claim construction issues presented in Plaintiff's Motion.

7. Defendants expect that the discovery sought from Messrs. Marten and Jenkins will prove, or will be highly probative of, Defendants' contention that their accused products are not "armor clamp assemblies" as defined and claimed in the '815 Patent, and thus do not infringe. At a minimum, Defendants believe that the discovery will reveal that the factual predicates for Plaintiff's proposed claim constructions are not well-founded; and will accordingly require denial of Plaintiff's Motion. As set forth more fully below, Defendants have

also diligently pursued this requested discovery, both before and since the filing of Plaintiff's Motion.

8. Defendants also need additional time to continue and complete ongoing work with their experts. Both the Initial and Modified Scheduling Orders in this case (which the Court adopted on the parties' joint recommendations) specifically allow time for all parties to work with their various experts so that a thorough record could be presented to the Court in advance of summary judgment briefing. Plaintiff's filing of its current Motion has not proceeded on such a schedule. As such, although Defendants are diligently working with their experts, those experts need additional time to complete their analyses and present their conclusions, including any affidavits in opposition to the Marten Declaration.

9. Allowance of Defendants' Rule 56(f) request will not prejudice Plaintiff, which waited more than six years to bring this infringement action in the first place. In addition, just two weeks ago Plaintiff (with Defendants) asked the Court to postpone the deadline for filing the parties' respective opening *Markman* briefs until October 20, 2006.

### Rule 56(f) Statement of Outstanding Discovery Needed by Defendants

10. The principal outstanding document and deposition discovery needed by Defendants falls into two categories: (1) discovery from Plaintiff and its testifying expert, Malcolm Marten, regarding the factual assertions in the Marten Declaration; and (2) discovery from the named inventor (and former employee of Plaintiff), Peter Jenkins, on the factual bases for Plaintiff's proposed claim constructions. These categories are discussed in turn, below.

11. **Marten Discovery**: Plaintiff submitted the 10-page Marten Declaration as extrinsic evidence that ostensibly supports Plaintiff's infringement contentions. Defendants accordingly seek document and deposition discovery from Mr. Marten on the factual assertions

3

in his Declaration. To the extent Plaintiff wishes the Court to consider this extrinsic evidence when deciding Plaintiff's Motion, Defendants should be allowed to take discovery on its factual underpinnings before filing their opposition papers.

12. Indeed, Plaintiff's Motion relies heavily upon the Marten Declaration to "fill in the gaps" in the claims, specification, and prosecution history of the '815 Patent. For example, the bulk of Plaintiff's Motion is directed to the parties' respective definitions of the claim term "armor clamp assembly," which appears in each of the claims of the '815 Patent asserted against Defendants. Defendants define the term to mean "a submarine telecommunications cable armor clamp assembly *that must be capable of reliably withstanding total unintended tensile loads of 100 tons on the armor wires* after being submerged in a marine environment for several years." (Emphasis added.)

13. Plaintiff disagrees with Defendants' "100 ton" definition, on the ground that "[t]he very first example set forth in the patent is of an armor clamp holding a cable capable of withstanding only *64 tons of force*." Plaintiff's Memorandum of Law, at 13. (Emphasis added.) (The cable at issue, illustrated in Figure 1 of the '815 Patent, was manufactured not by Plaintiff, but by a third party, STC Submarine Systems, or "STC".)

14. According to Plaintiff and Mr. Marten, "[t]he fact that the inventor specifically chose to illustrate" an "armor clamp gripping a cable that can only withstand a load of approximately 64 tons, of which the armor wires themselves hold approximately 44 tons, is indicative of the fact that the inventor did not intend" to define the claim term "armor clamp assembly" as Defendants propose. Marten Decl. ¶ 13.

15. However, *nothing* in the claims, specification, or prosecution history of the '815 Patent teaches the supposed "64-ton" limitation of the STC cable illustrated in Figure 1

4

of the patent. Plaintiff's sole evidentiary support for this factual assertion is the Marten Declaration – thereby neatly illustrating why discovery from Mr. Marten is necessary.

16. In his Declaration, Mr. Marten avers that he "used to work for STC," which manufactured the cable illustrated in Figure 1 of the '815 Patent. Marten Decl. ¶ 13. The Declaration further contends that the tensile strength capabilities of the wires used in the STC cable are "well known" and that "[g]iven this and other known features of STC's cables, one can calculate the total tensile load the cable is capable of supporting." *Id.* ¶ 13. It then concludes, "[b]ased on my knowledge of the *known features* of STC's cables and *various calculations*," that the STC cable illustrated in Figure 1 of the '815 Patent "can only withstand a load of approximately 64 tons." *Id.* (Emphases added.)

17. Before opposing Plaintiff's Motion and the Marten Declaration upon which it rests, Defendants are entitled to seek document and deposition testimony from Mr. Marten to test and disprove the factual underpinnings of his analysis. Defendants' discovery will be directed to (among other things) Mr. Marten's factual assertions:

    (a) that the tensile capabilities of the STC cable illustrated in Figure 1 of the '815 Patent were "well known" to him and to persons of ordinary skill in the art in 1986, *see* Marten Decl. ¶ 13;

    (b) that there are other unidentified yet ostensibly "known features" of STC's cables that militate in favor of the grant of Plaintiff's Motion (*id.*);

    (c) that Mr. Marten has performed "various calculations" that support his assertions regarding the tensile strength of the STC cables (*id.*);

5

  (d) that the phrase "armour clamp assembly" is not tied to an ability to withstand any particular maximum load" (*id.* ¶ 12) and

  (e) that in his "experience the ability to withstand loads of up to 82 tons would have been in 1986, and would be today, more than sufficient strength in most circumstances for a submarine cable armor clamp assembly." *Id.* ¶ 14.

  18. Defendants submit that this discovery will likely reveal that factual assertions in the Marten Declaration require correction or qualification. At the very least, the discovery will demonstrate disputed issues of material fact as to the bases and adequacy of those assertions – and thus would preclude summary judgment.

  19. Because the Marten Declaration cites no industry publications or other independent sources for its various factual assertions, Defendants must take document and deposition testimony from Mr. Marten personally to plumb the bases of his assertions.

  20. Defendants have been diligent in seeking this evidence from Plaintiff and Mr. Marten. On October 25, 2005, Defendants served Document Request No. 53 on Plaintiff, for various enumerated documents "concerning each expert witness whom Global Marine expects to call at the trial or any evidentiary hearing," including, without limitation:

  (a) any draft and interim reports prepared by the expert witness;

  (b) the documents considered by the witness in arriving at his conclusions;

  (c) any communications between the expert witness and opposing counsel; and

6

  (d) transcripts of any deposition or trial testimony by the expert witness in prior cases.

21. On December 8, 2005, Plaintiff responded (subject to certain objections that are not relevant here) that it would "comply with Rule 26(a)(2) at a time set by the Court." Now that Plaintiff has supplied the Marten Declaration, it must also produce the documents responsive to Defendants' salient and outstanding Document Requests.

22. Accordingly, after receiving the Marten Declaration, Defendants again wrote Plaintiff's counsel requesting the production of document responsive to Document Request No. 53 no later than September 8, 2006. Defendants further informed Plaintiff's counsel that Defendants wished to depose Mr. Marten after Plaintiff produces its and Mr. Marten's responsive documents, and asked Plaintiff to provide convenient deposition dates in the last week of September and first half of October 2006. As of today, Defendants have not received any response from Plaintiff, but hope to complete the necessary document and deposition discovery within the next three months (*i.e.*, by November 17, 2006, which is the current deadline for Defendants to file their rebuttal *Markman* brief).

23. **Jenkins Discovery:** Defendants also need document and deposition discovery from Peter Jenkins, a former employee of Plaintiff who is the named inventor on the '815 Patent. Jenkins currently resides in the United Kingdom and is represented in this action by Plaintiff's counsel. Defendants believe that Jenkins will be a trial witness for Plaintiff, and is otherwise under Plaintiff's control for discovery purposes – such that Jenkins' deposition should be provided without the need for Defendants to resort to time-consuming international discovery procedures.

24. Defendants seek to take document and deposition discovery from Jenkins, the named inventor, as to (among other things) the factual bases for the claim constructions proposed by Plaintiff, as well as Plaintiff's arguments against Defendants' proposed constructions.

25. For example, Plaintiff and Mr. Marten contend that the patent (especially the STC cable illustrated in Figure 1 of the patent) and the prosecution history demonstrate "that the inventor did not intend to limit the definition of 'armour clamp assembly'" as Defendants proposed. Marten Decl. ¶ 13. To the extent Mr. Jenkins' testimony on these points is inconsistent with such factual assertions (and the other extrinsic evidence proffered in Plaintiff's Motion), that will provide an additional basis for the denial of Plaintiff's Motion.

26. Defendants have been diligent in seeking this evidence. For the past six months, for example, Defendants have repeatedly asked Jenkins (through the counsel he shares with Plaintiff) whether he will voluntarily produce documents and sit for deposition, rather than forcing Defendants to resort to time-consuming international discovery procedures to obtain the necessary discovery. Defendants memorialized those repeated requests in correspondence to opposing counsel dated February 28, 2006, March 20, 2006, May 24, 2006, and August 1, 2006 (collectively attached hereto as Exhibit 1). Defendants received no substantive response until August 18, 2006, nearly a month after the filing of Plaintiff's Motion.

27. On August 1, 2006, for example, Defendants expressly asked opposing counsel in writing, "one last time," whether Jenkins had authorized them "to accept document and deposition subpoenas on [his] behalf," so that Defendants could take discovery from Jenkins while avoiding "the need to resort to the time-consuming procedures of the Hague Convention." *See* Ex.1.

28. On August 18, 2006, opposing counsel finally agreed to relay Defendants' longstanding request to Jenkins for consideration. As of today, Defendants have received no further response to their inquiry, and accordingly will promptly seek the necessary discovery from Jenkins through appropriate international discovery procedures. Defendants will also continue to negotiate in good-faith with opposing counsel in an effort to streamline the discovery process with regard to their various clients. (In addition to Plaintiff and Mr. Jenkins, opposing counsel also represents five other former employees of Plaintiff – Messrs. Mole, Reynolds, Thomas, Overall, and Smith – each of whom has information relevant to the claims and defenses in this action.) To that end, on August 18, 2006, Mr. Jenkins' counsel asked (for the first time) to receive exemplars of the document and deposition subpoenas Defendants propose to serve upon Mr. Jenkins. Defendants will promptly provide those exemplars for Mr. Jenkins' timely review.

29. While it is impossible to know for certain, Defendants hope to complete the time-consuming international discovery procedures and obtain the necessary discovery from Mr. Jenkins within the next three months (*i.e.*, by November 17, 2006, which is the current deadline for Defendants to file their rebuttal *Markman* brief). Obviously, that period can be shortened considerably if Mr. Jenkins authorizes his counsel to accept service of document and deposition subpoenas on his behalf.

SIGNED UNDER THE PAINS AND PENALTY OF PERJURY ON THIS 25 DAY OF AUGUST, 2006.

_____
John L. Cuddihy

**CERTIFICATE OF SERVICE**
I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 25, 2006.
By: _____

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

JOHN L. CUDDIHY
(202) 434-5348
jcuddihy@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

February 28, 2006

*Via Telecopy and First-Class Mail*

Eric J. Marandett, Esq.
Daniel C. Winston, Esq.
Mark S. Freeman, Esq.
Stacy L. Blasberg, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110

Re:   **Global Marine Systems Limited v. Tyco Electronics Corp., et al.**
      Civil Action No. 05-11605-RGS (D. Mass.)

Dear Counsel:

In their Rule 26 initial disclosures, the Defendants identified thirteen officers, directors, and employees of Plaintiff (or Plaintiff's British parent corporation, Bridgehouse Marine) who are likely to have information relevant to this case. Because I understand that those individuals currently reside and work in the United Kingdom, I am writing to solicit your cooperation with regard to their depositions.

I ask that you promptly inform me, for each of the designated witnesses, whether you will voluntarily produce them for deposition in the United States. We are sure that at least some of these witnesses routinely visit the United States, and we would be happy to endeavor to schedule the depositions around their travel schedules, to avoid the need for a special trip.

For any witnesses that you will not voluntarily produce for deposition in the United States, please inform me, for each such witness, (1) whether you will voluntarily produce them for deposition at Plaintiff's offices in the United Kingdom, or (2) whether you will require Defendants to subpoena them for deposition pursuant to the salient international conventions.

EXHIBIT 1

WILLIAMS & CONNOLLY LLP

Eric J. Marandett, Esq.
Daniel C. Winston, Esq.
Mark S. Freeman, Esq.
Stacy L. Blasberg, Esq.
February 28, 2006
Page 2

      Obviously, the extent of Plaintiff's cooperation on this issue bears directly on the pretrial schedule that will be discussed at the March 21 status conference. Therefore, please provide the information requested above by next Wednesday, March 8. If you cannot provide the information by that date, please let me know by March 8 when I will receive your response. I look forward to hearing from you.

                                            Very truly yours,

                                            John L. Cuddihy

cc:    Erik J. Frick, Esq.

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

JOHN L. CUDDIHY
(202) 434-5348
jcuddihy@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 20, 2006

*Via Telecopy and First-Class Mail*

Daniel C. Winston, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110

      Re:    **Global Marine Systems Limited v. Tyco Electronics Corp., et al.**
              Civil Action No. 05-11605-RGS (D. Mass.)

Dear Dan:

        I write to follow-up on the portion of our March 9, 2006, telephone call regarding the depositions of certain of Plaintiff's officers, directors, managing agents, and current and former employees, all of whom I understand currently work and reside in the United Kingdom.

        On our telephone call, you indicated that the following individuals are currently employed by Plaintiff (and/or its parent corporation, Bridgehouse Marine):

        1.    Mr. Craig Beech
        2.    Mr. Peter Ford
        3.    Mr. Phil Hart
        4.    Mr. Andy Ruhan
        5.    Mr. Gabriel Ruhan
        6.    Mr. Larry Schwartz
        7.    Mr. David Tibbetts

In addition, you indicated that the following individuals are former employees of Plaintiff:

        8.    Mr. Peter D. Jenkins
        9.    Mr. Peter Mole
       10.   Mr. Chris Reynolds

Daniel C. Winston, Esq.
March 20, 2006
Page 2

      11.    Mr. Ken Smith
      12.    Mr. Andrew Thomas
      13.    Mr. Kevin Todd

    At my request, you agreed to provide current or last-known contact information for each of these individuals. I would appreciate knowing when I might expect to receive that information.

                              Very truly yours,

                              John L. Cuddihy

cc:    Erik J. Frick, Esq.

LAW OFFICES
## WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

JOHN L. CUDDIHY
(202) 434-5348
jcuddihy@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 24, 2006

*Via Telecopy and First-Class Mail*

Mark S. Freeman, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110

Re:   **Global Marine Sys. Ltd. v. Tyco Telecommunications (US) Inc., et al.**
      Civil Action No. 05-11605-RGS (D. Mass.)

Dear Mark:

At my request, you and I (and Ms. Courtney Byrd of this firm) spoke for a half-hour yesterday afternoon (from 2 until 2:30 pm) on three discovery matters. At 4:22 p.m. yesterday, I received a letter from you which (1) ignored two of the three discovery matters, (2) misrepresented our discussion on the third discovery matter, and (3) raised certain issues for the first time. I write to correct your letter and to provide an accurate record of our conversation.

1.   **Discovery from Former Employees of Global Marine**: Although not mentioned in your letter, on yesterday's call we discussed Defendants' need to take discovery from former employees of Global Marine.

At my request, you confirmed that your firm now represents five former employees of Global Marine in connection with this case, all of whom currently reside in the United Kingdom: Peter Jenkins, Peter Mole, Chris Reynolds, Andrew Thomas, and Brian Overall. I asked you to further confirm that those individuals have authorized you to accept service of document and deposition subpoenas on their behalf, so that we could avoid the time-consuming procedures of the Hague Convention. You agreed to provide that confirmation, and we further agreed to confer on the location and logistics for the depositions. In that regard, please let me know whether (and when) these individuals are planning to visit the United States in the next few months, so that we may have the option of coordinating their depositions around their travel schedules.

WILLIAMS & CONNOLLY LLP

Mark S. Freeman, Esq.
May 24, 2006
Page 2

       Also, I asked you to provide current contact information for Ken Smith, another former Global Marine employee. You stated that you have asked Global Marine for this information and would provide it promptly.

       2.    <u>Global Marine's Production of "Damages-Related" Documents</u>: Although not mentioned in your letter, on yesterday's call we discussed the need for Global Marine to produce its "damages-related" documents.

       On our March 9, 2006, telephone call, I asked that Global Marine promptly produce its "damages-related" documents, including but not limited to documents responsive to Defendants' Document Requests Nos. 32 and 48. In response, you and Dan Winston asked that the parties "table a discussion" of Global Marine's production of those documents to a later date.

       On yesterday's call, I raised this issue again, because Global Marine has not produced those documents and the discovery clock is running. In response, you stated that you had a "wish list" of salient documents that should be produced in the case. You agreed to promptly provide that list to me for review, and we agreed to speak again after my receipt and review of that list.

       3.    <u>Disclosure of Certain Tyco-Global Marine Contracts</u>: On our call, you asked that Defendants agree to amend the protective order to allow your firm to disclose certain Tyco-Global Marine contracts to various unidentified "employees" of Global Marine. The contracts at issue, which Defendants properly designated as "Confidential" under the protective order, bear Bates stamps TT(US) 10394 through 12023. (I note that Global Marine has not produced its own copies of the contracts.) At my request, you confirmed that the "employees" at issue are full-time employees of Global Marine, and are not employed by (or do any work for) any other entity (such as Bridgehouse Marine, Global Marine's parent corporation). I agreed to promptly relay your request to Defendants and to provide their response next week, after they have had an opportunity to review the salient contracts. Thus, I do not understand why your letter asked me to respond by the end of "this week."

       On our call, you also speculated that there might be other documents designated as "Confidential" by Defendants that your firm may wish, at some point, to share with various unidentified employees of Global Marine. If there are such documents, we agreed that you would first provide me with their Bates ranges for Defendants' review, and Defendants would consider your request.

       4.    <u>Defendants' Supplementation of Interrogatory Responses</u>: Although you did not raise this issue on yesterday's call, your letter requests that Defendants supplement their interrogatory responses "to include a list of documents" relevant to those responses. Be advised that Defendants will supplement their interrogatory responses in accordance with Local Rule 26.5(c)(8) by Friday, June 16, 2006.

WILLIAMS & CONNOLLY LLP

Mark S. Freeman, Esq.
May 24, 2006
Page 3

\*   \*   \*

      This is the fourth time I have received a letter from your firm that misstates the substance of our conversations and/or selectively recounts only portions of our conversations. Normally, conversations between counsel are an efficient means to resolve issues – but not when I have to draft lengthy rebuttal letters after each call. If this happens again, please be advised that I will no longer discuss matters with you by telephone (except to the extent required by the Federal or Local Rules).

                                        Very truly yours,

                                        John L. Cuddihy

cc:    Erik J. Frick, Esq.

LAW OFFICES
## WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

JOHN L. CUDDIHY
(202) 434-5348
jcuddihy@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 1, 2006

*Via Telecopy and U.S. First-Class Mail*

Eric J. Marandett, Esq.
Daniel C. Winston, Esq.
Mark S. Freeman, Esq.
Stacy L. Blasberg, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110

Re: **Global Marine Sys. Ltd. v. Tyco Telecommunications (US), Inc., et al.**
Civil Action No. 05-11605-RGS (D. Mass.)

Dear Counsel:

I am writing to ask, one last time, for your cooperation in serving document and deposition subpoenas on those former and current employees of Global Marine whom you represent for purposes of this action. As you know, Defendants have been seeking your cooperation on this issue since February 2006 – see my letters of February 28, 2006; March 20, 2006; and May 24, 2006. We need to promptly resolve this issue, either cooperatively or by motions practice.

First, I understand that your firm represents five former Global Marine employees, all of whom reside in the United Kingdom: (1) Peter Jenkins (the named inventor), (2) Peter Mole, (3) Chris Reynolds, (4) Andrew Thomas, and (5) Brian Overall. Please confirm that these are the only former Global Marine employees represented by you. Please also confirm that those individuals have authorized you to accept document and deposition subpoenas on their behalf, so that we may avoid the need to resort to the time-consuming procedures of the Hague Convention.

Second, please confirm that your firm will accept service of document and deposition subpoenas on behalf of any current employees of Global Marine (including, for example, Craig Beech, David Tibbetts, and David Foulger).

Third and finally, we have been waiting since May 2006 for you to provide current contact information for another former Global Marine employee, Ken Smith. Do you or Global Marine have it? If so, please provide it.

WILLIAMS & CONNOLLY LLP
Eric J. Marandett, Esq.
Daniel C. Winston, Esq.
Mark S. Freeman, Esq.
Stacy L. Blasberg, Esq.
August 1, 2006
Page 2

      We are scheduled to speak on other issues this coming Thursday, August 3, 2006. Please respond to this letter and provide the requested information by this Thursday. If we cannot reach a resolution on these issues in short order, we will file an appropriate motion with the Court. I hope it does not come to that.

                      Very truly yours,

                      John L. Cuddihy

cc:    Erik J. Frick, Esq. (via telecopy only)